# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIN EILER, | ) |
|    Plaintiff, | ) ) ) |
|      vs. | ) Cause No. 1:16-cv-285-WTL-DML ) |
| KIRSTJEN NIELSEN, | ) ) |
|    Defendant. | ) |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment on the only claim that remains in this case (Dkt. No. 136). The Plaintiff is proceeding pro se in this case, and the Defendant served her with the notice required by Local Rule 56-1(k). Dkt. No. 138. Service was made by both United States Mail and email. The Plaintiff has not filed a response to the motion for summary judgment and the time for doing so has expired. The Court, being duly advised, **GRANTS** the Defendant's motion for the reasons set forth below.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, a party who bears the burden of proof on a particular issue may not rest on her pleadings, but must show what evidence she has that

there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. FACTS

Because Plaintiff Erin Eiler did not file a response to the instant motion, the properly supported facts asserted by the Defendant are taken as true. *See* Local Rule 56-1(f). Those facts follow.

In 2009, Plaintiff Erin Eiler applied to be a security screener at the Sioux Falls Regional Airport. At that time, security at the airport was provided by Covenant Aviation Security, Ltd. ("CAS"), pursuant to a contract between CAS and the Transportation Security Administration ("TSA") that was entered into as part of the TSA's Screening Partnership Program.

Employees hired by CAS to perform the screening services contemplated by the contract were not employees of the TSA or the federal government; rather, they were employees of CAS. CAS was responsible for the recruiting and hiring of security screeners who worked under the contract and was required by the contract to ensure that "all persons designated to be deployed as screeners meet all statutory requirements, TSA specified requirements, and suitability standards for employment." Dkt. No. 136-3 at 3. The TSA did not participate in the hiring process administered by CAS. CAS retained the authority to discipline and terminate its employees who served as security screeners at the Sioux Falls Regional Airport, without involvement from the TSA.

Additionally, CAS was solely responsible for all employee call-ins, vacation requests, sick leave issues, and other attendance-related matters for its employees. CAS, not the TSA, provided pay and benefits to contract screeners like Eiler and issued wages to, and collected all applicable federal, state, local, and Social Security taxes from, its employees. The TSA had no role in any payroll-related matters for the CAS employees providing services under the contract.

Under the contract, CAS was required to provide on-site supervision, evaluation, and discipline of all employees at all times that a security screening location was staffed. CAS also conducted the on-site training of the screeners it employed, although the TSA developed a national screener assessment and training curricula and provided all required screener technical training curricula to CAS. Furthermore, in areas other than technical screening performance requirements, CAS bore responsibility for designing, developing, and implementing training for its screeners and supervisors. In addition, CAS was responsible for the costs of its operations, including the costs of employees, employee assessment, credentialing, travel, operational consumables, uniforms, office equipment, supplies, as well as scheduling and maintenance of operations.

On July 13, 2009, Eiler received a contingent offer from CAS for a position as a security screener at the Sioux Falls Regional Airport. The offer included the following:

> You are also free to terminate your employment with CAS at any time. Any employment relationship with CAS is considered "at-will"—you or CAS can terminate your employment with or without cause. CAS also reserves the right to change the conditions of your employment at-will. . . . Please also be advised that the company may, at the company's discretion with or without notice, add, delete or modify the requirements of this position. . . . Covenant Aviation Security, Ltd. sets very high standards for the selection of the members of the Covenant Aviation Security team and we feel you will be a true asset to our team.

Dkt. No. 136-4 at ¶ 5. Eiler accepted the contingent offer on July 13, 2009. Subsequently, Eiler received an additional letter from CAS dated July 31, 2009, confirming that she had

"successfully completed the pre-screening/assessment process for the position of Checkpoint Screener with Covenant Aviation Security, LLC (CAS)" and instructing her to report to CAS Operations, with a start date of July 31, 2009. The letter further provided that CAS would pay Eiler an hourly rate of $12.00 for her training period and that, upon successful completion of her training, her hourly rate would be $13.05. Regarding benefits, the letter stated that, effective on the first day of the month following ninety days of employment, Eiler would be eligible to participate in all employee benefit plans and programs that CAS offered to other employees at her level. It further advised Eiler that CAS was an "at-will company" and that "as a CAS employee, [Eiler would] be subject to periodic background checks, random drug screenings, and annual job recertification." The letter is signed by Betsy Hunhoff, the Recruiting Coordinator for CAS. Eiler accepted CAS's offer on July 31, 2009.

Eiler was employed by CAS as a security screener at the Sioux Falls Regional Airport for only 28 days. During her 28 days as a screener at the Sioux Falls Airport, Eiler received two paychecks from CAS. Eiler's job description required—among other duties and qualifications—that she perform baggage screening and have the ability to lift up to seventy pounds. She was terminated on August 28, 2009, because she was "[i]neligible for employment" as she was "not willing to work in baggage." Dkt. No. 136-4 at ¶ 8. The Covenant Personnel Action Notice is signed by Covenant's Recruiting Coordinator, Ms. Hunhoff. The Covenant Separation Checklist for Eiler denotes her supervisor as Bill Boyd and is again signed by Ms. Hunhoff.

### III. DISCUSSION

The only claim remaining in this case is Eiler's claim that in 2009 she was terminated from her job as a screener at the Sioux Falls Regional Airport because of her color, national origin, race, religion, and sex in violation of Title VII. The remaining Defendant in this case is

Kirstjen Nielsen who, as Secretary of Homeland Security, is the proper Defendant in a Title VII case brought by a person asserting a Title VII claim against the TSA. The Defendant now moves for summary judgment on the ground that Eiler was not an employee of the TSA, but rather was an employee of CAS, and therefore Eiler cannot assert a Title VII claim against the Defendant. The Court agrees.

> Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person," 42 U.S.C. § 2000e(b), while an "employee" is defined broadly, as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

*Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). Thus, in order for her Title VII claim against the Defendant to survive summary judgment, Eiler must be able to point to evidence sufficient to prove the existence of an employer-employee relationship between her and the TSA. As the Defendant recognizes, the fact that Eiler clearly was an employee of CAS is not, by itself, dispositive, as "[i]t is also well established in this circuit that a plaintiff can, under certain limited circumstances, bring a claim against a defendant who is not [her] direct employer." *Id.* (citing *EEOC v. Illinois*, 69 F.3d 167, 169 (7th Cir. 1995)).

In order to determine whether the TSA was an employer of Eiler for Title VII purposes, the Court must apply the following five-factor "economic realities" test:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

5

*Frey v. Coleman*, 903 F.3d 671, 676 (7th Cir. 2018) (reiterating applicability of test set forth in *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378-79 (7th Cir. 1991)). "Of these factors, 'the employer's right to control is the most important,' and a court must give it the most weight." *Id.* (quoting *Knight*, 950 F.2d at 378).

Eiler has not responded to the motion for summary judgment and therefore has not pointed to any evidence that any of these factors support a finding that she was an employee of the TSA. The Court finds that the facts of record pointed to by the Defendant and set forth above demonstrate the contrary. CAS, not the TSA, was responsible for supervising Eiler's work performance and schedule. CAS was responsible for training Eiler, with the TSA's only role being the development of national training and assessment with regard to the technical screening aspect of the job. CAS was responsible for all of the costs of its operations at the airport, and CAS was the source of all pay and benefits to which Eiler was entitled. The potential duration of Eiler's position depended upon CAS's contract with the TSA; there is no indication that Eiler's position would have continued if CAS's contract with the TSA did not. Accordingly, there is simply no basis upon which a trier of fact could determine that the TSA was Eiler's employer under Title VII, and the Defendant is entitled to summary judgment on Eiler's claim.[1]

## IV. CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment (Dkt. No. 136) is **GRANTED**. Because this ruling resolves the last remaining claim in Eiler's Amended Complaint, final judgment will now be entered in this case.

---

[1] In light of this ruling, the Court need not consider the Defendant's alternative argument that Eiler's claim is time-barred.

SO ORDERED: 10/15/18

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to Plaintiff Erin Eiler and to all counsel of record via electronic notification